UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HODSON BROADCASTING,<br><br>Defendant. | Case No. 2:11-cv-00332-APG-GWF<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO AMEND**<br><br>(Dkt. No. 30) |

The United States of America seeks to enforce a $20,000.00 forfeiture order against Hodson Broadcasting for repeated violations of the Communications Act and Federal Communications Commission ("FCC") regulations.[1] The Government seeks summary judgment, arguing it has provided sufficient evidence establishing both Hodson's violations and the reasonableness of the $20,000 forfeiture sum. I agree. Because Hodson has failed to raise a genuine issue of material fact, and the Government is entitled to judgment as a matter of law, the Government's motion is granted.

Hodson's response to the Government's summary judgment motion proposes to add two new claims against the Government: one for the FCC's allegedly improper handling of an agency appeal, and another for the FCC's allegedly improper handling of an administrative tort claim form. Although Hodson has not properly sought leave to amend, I will treat the language in Hodson's response as a motion to amend its answer. Because Hodson has failed to plead sufficient facts to state a claim as to either of these causes of action, its request to amend is denied as futile.

/ / / /

/ / / /

/ / / /

---

[1] [*See* Dkt # 1.]

## I. BACKGROUND

On June 28, 2006, the FCC granted Hodson a construction permit to build an FM radio station in Des Moines, New Mexico.[2] Once constructed, Hodson was required to apply for final approval to operate its station. Hodson's construction permit restricted the type of equipment it could install, and required it to submit a formal request to the FCC if it desired to conduct program testing prior to final operation approval.

From June 2008 through December 2008, after receiving numerous complaints about radio interference in the area around Raton, New Mexico, agents from the FCC's Denver Office confirmed Hodson was transmitting from an unauthorized station on a rooftop in Raton.[3] The agents also noted the station was transmitting with a power level, antenna height, and antenna structure not authorized by Hodson's construction permit. On June 25, 2008, July 1, 2008, and December 11, 2008, FCC agents verbally warned Hodson that its transmissions from Raton were unauthorized.

On November, 17, 2008 the FCC issued to Hodson a Notice of Apparent Liability for Forfeiture ("NAL") detailing Hodson's violations.[4] Hodson was provided an opportunity to respond, and did so on December 19, 2008.[5]

On December 29, 2008, after transmitting without authorization for over five months, Hodson requested, for the first time, to operate in Raton.[6] In February of 2009, Hodson filed another request for authorization to operate in Raton.[7] The FCC denied both of Hodson's requests.[8]

---

[2] [Dkt #1, Exhibit A, ¶2.]

[3] [Dkt #1, Exhibit A, ¶¶3-10.] Raton is roughly 34 miles from Defendant's authorized location of Des Moines. [Dkt. #1.]

[4] [Dkt #1, Exhibit A.]

[5] [Dkt #1, Exhibit F, ¶11.]

[6] [Dkt #1, Exhibit E.]

[7] Id.

[8] Id.

The FCC continued to receive complaints about radio interference from Hodson's operations in Raton, so on April 21, 2009, the FCC issued a second NAL to Hodson.[9] Hodson was again provided an opportunity to respond, and did so on May 20, 2008.[10]

On October 3, 2009, FCC agents confirmed Hodson continued its unauthorized operations in Raton.[11] On November 13, 2009, the FCC issued a Forfeiture Order in the amount of $20,000.00—$10,000 for each NAL—against Hodson for willful and repeated violations of its construction permit and FCC regulations.[12] Hodson failed to pay, and the Government sued to enforce the FCC's forfeiture order. The Government now moves for summary judgment that the FCC's forfeiture is warranted, and the forfeiture sum is appropriate.

II.     DISCUSSION

    A. **Plaintiff's Motion for Summary Judgment**

        i.     **Legal Standard—Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.[13] Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party, and a dispute is "material" if it could affect the outcome of the suit under the governing law.[15] In evaluating a summary judgment

---

[9] [Dkt #1, Exhibit E.]

[10] [Dkt #1, Exhibit E.]

[11] [Dkt #1, Exhibit F.]

[12] *Id.*

[13] *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party.[16]

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact.[17] Once the moving party satisfies those requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial."[18] The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists,"[19] and "must do more than simply show that there is some metaphysical doubt as to the material facts."[20] "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."[21] The court may consider only evidence which might be admissible at trial in ruling on a motion for summary judgment.[22]

    ii.    **Analysis**

The FCC may levy forfeitures on permittees that repeatedly or willfully violate an FCC regulation.[23] The FCC considers a number of factors in determining an appropriate forfeiture sum.[24] Once the FCC has issued a forfeiture order, if the violator fails to pay, the United States

---

[16] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[17] *Celotex*, 477 U.S. at 323.

[18] *Anderson*, 477 U.S. at 256.

[19] *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991),

[20] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[21] *Anderson*, 477 U.S. at 252.

[22] Fed. R. Civ. P. 56(c).

[23] 47 U.S.C. § 503(b)(1)(B). Before imposing forfeiture, the FCC issues an NAL and must allow the violator a reasonable period to respond. 47 U.S.C. § 503(b)(4); 47 C.F.R. § 1.80(f)(3). There appears no dispute that the FCC complied with this requirement.

[24] 47 U.S.C. § 503(b)(2).

may bring an enforcement suit in federal district court.[25] The district court action is conducted by a trial *de novo*.[26] To succeed in this forfeiture action, the Government must prove 1) Hodson violated a FCC regulation, thereby warranting forfeiture, and 2) the forfeiture sum is appropriate.[27]

### 1. Hodson Violated FCC Regulations

The parties focus on two FCC regulations: one governing permittees carrying out program tests and one governing permittees carrying out equipment tests.

After constructing a broadcast station pursuant to an FCC permit, but before the FCC has approved the station for operation, a permittee meeting certain conditions may conduct programming tests.[28] Relevant here, a permittee may carry out program tests only "in accordance with the terms of the construction permit, the technical provisions of the application, the rules and regulations and the applicable engineering standards."[29] Further, Hodson's construction permit contained a special restriction requiring it to file a formal request with the FCC before conducting program tests.

During the construction process, the FCC's rules also permit an entity to test equipment "for the purpose of making such adjustments and measurements as may be necessary to assure compliance with the terms of the construction permit, the technical provisions of the application therefore, the rules and regulations and the applicable engineering standards."[30] The equipment testing rules require the permittee to notify the FCC prior to testing.[31] Finally, under both the

---

[25] 47 U.S.C. § 504(a).

[26] 47 U.S.C. § 503(b).

[27] *Id.*

[28] 47 C.F.R. § 73.1620.

[29] 47 C.F.R. § 73.1620.

[30] 47 C.F.R. § 73.1610.

[31] *Id.*

program and equipment testing provisions, the FCC may revoke, suspend, or modify any testing that may otherwise be permissible.[32]

The Government argues Hodson's transmissions in Raton violated the program testing provision. Hodson argues, instead, that its activities fall under the equipment testing provision. I need not decide which provision applies because the undisputed facts establish that Hodson violated the FCC's regulations under both provisions.[33]

Hodson operated transmission equipment in Raton in violation of its permit.[34] Hodson's equipment was of a power and type not authorized by its permit.[35] Hodson was required to comply with the terms of its permit to avoid violating FCC regulations under either the program testing or equipment testing provisions.[36] Additionally, the FCC notified Hodson on several occasions it was not authorized to operate in Raton. Even if Hodson were somehow permitted to test under the program or equipment testing provisions, the FCC revoked that authorization..[37]

Hodson's argument, distilled, is that it is shielded by the equipment-testing provision because it transmitted only as "necessary" to "evaluate and use" its radio equipment. But Hodson has not offered any admissible evidence sufficient to support a finding that it met any of the requirements of this provision, including that (1) it informed the FCC prior to commencing

---

[32] 47 C.F.R. § 73.1620(b); 47 C.F.R. § 73.1610(b).

[33] I do not have jurisdiction to address arguments regarding the FCC's denials of Hodson's temporary authorization or permit modification requests. [Dkt #32.] The FCC's final orders must be appealed in accordance with chapter 158 of Title 28. 47 U.S.C. § 402(a)–(b). Chapter 158 in turn vests exclusive jurisdiction to review final orders of the FCC in the court of appeals. 28 U.S.C. § 2342(1).

[34] [Dkt #1, Ex. F, ¶2.] The facts in the NALs and other FCC records are presumptively excepted from the hearsay rule under the public and business records exceptions. Fed. R. Evid. 803(6), 803(8); *Freitag v. Ayers*, 468 F.3d 528, 541 (9th Cir. 2006) ("The district court did not err in admitting the IG's report into evidence at trial. Under the hearsay exceptions . . . the report was afforded a presumption of reliability and trustworthiness that the defendants failed to rebut."). While Hodson notes that he "consistently and earnestly disputed, denied, or explained numerous discrepancies, fabrications, and misinformation" in the FCC's documents—he offers no evidence suggesting the facts in the reports are inaccurate. [Dkt #32, ¶2.]

[35] [Dkt #1, Ex. F, ¶2].

[36] *See* 47 C.F.R. §§ 73.1620; 73.1610.

[38] [Dkt #32, ¶ 3.]

testing; (2) its testing was necessary to "assure compliance" with its construction permit or FCC regulations; and (3) its equipment complied with its construction permit and FCC regulations.[38] The Government has produced uncontested evidence showing Hodson transmitted from an unauthorized city with improper equipment over the course of a year. No reasonable jury could conclude Hodson was testing its equipment for the purpose of making "adjustments and measurements as may be necessary to assure compliance" with applicable rules and regulations.[39]

### 2. The Forfeiture Sum is Not Excessive.

The FCC determines the sum to be forfeited using a number of factors, including "the nature, circumstances, extent, and gravity of the violation and, with respect to the violator, the degree of culpability, and history of prior offenses, [and] ability to pay...."[40] The FCC has adopted regulations setting base forfeiture sums for various violations of its regulations.[41] The regulations also provide upward and downward adjustment factors. Upward adjustment factors raised by the Government include "intentional violations," "prior violations," and "repeated or continuous violations."

The Government contends Hodson's transmissions constitute "[c]onstruction and/or operation without an instrument of authorization for the service," which carries a base forfeiture of $10,000.[42] Hodson argues that its transmissions fall, instead, into the category of "construction or operation at unauthorized location," which carries a $4,000 base forfeiture. The FCC has previously interpreted construction and operation at locations far removed from the authorized location—such as that carried out by Hodson—as falling within the category proposed by the Government.[43] Hodson constructed and operated its station in a different city than the one

---

[38] [Dkt #32, ¶ 3.]

[39] 47 C.F.R. § 73.1610.

[40] 47 U.S.C. § 503(b)(2).

[41] 47 CFR § 1.80.

[42] [Dkt #34, at 6-7.]

[43] See, e.g., Metro Program Network, Inc., 1990 WL 605680 (FCC 1990) (applying the $10,000 category where operations occurred 25 miles from authorized location).

7

authorized, serving a different community. The FCC's interpretation of its regulations is reasonable, and entitled to deference.[44] Accordingly, the $20,000 forfeiture sum—$10,000 for each NAL—is appropriate.

Even if Hodson was correct and a $4,000 base rate applied, no reasonable jury could find the $20,000 forfeiture amount inappropriate. Hodson repeatedly and intentionally violated the FCC's rules over a year period despite being warned of his violations on multiple occasions. Given the presence of these upward adjustment factors, the Government could have sought forfeiture sums higher than the base figures. Further, Hodson has provided no admissible evidence in support of his arguments that the "inability to pay" downward adjustment factor applies, or that the forfeiture sum is otherwise unreasonable. Given Hodson's repeated violations of the construction permit and FCC regulations, and given the lack of admissible evidence suggesting $20,000 is excessive, no reasonable jury could find the forfeiture sum inappropriate.

## B. HODSON'S AMENDED COUNTERCLAIMS

### i. Legal Standard—Amendment

Federal Rule of Civil Procedure 15 requires district courts to "freely give leave [to amend] when justice so requires."[45] But the court has discretion to deny amendment if justified.[46] When determining whether to allow amendment, courts consider five factors: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the complaint.[47] Any of the first four factors, alone, can serve as a basis for denying leave to amend.[48] An amendment is futile where, taking the pleaded facts as true, it fails to state a claim for which relief may be granted.[49]

---

[44] *Fones4All Corp. v. F.C.C.*, 550 F.3d 811, 819 (9th Cir. 2008).

[45] Fed. R. Civ. Proc. 15(a)(2).

[46] *Id.*

[47] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

[48] *Chudacoff v. University Medical Center of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).

[49] *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990).

ii. Analysis

Within its opposition to the Government's summary judgment motion, Hodson appears to propose two new counterclaims under the Federal Tort Claims Act ("FTCA"). First, Hodson alleges the FCC improperly denied its Application for Review ("AFR") of the FCC's March 31, 2010 order denying Hodson's December, 2008, and February, 2009, requests to operate in Raton. Second, Hodson alleges the FCC improperly handled Hodson's submission of an FTCA notice of claim form, also known as an "SF 95" form.

1. *Hodson fails to state a claim that the FCC improperly handled the AFR.*

An entity requesting the FCC reconsider one of the agency's final orders must "file" an application for review within 30 days.[50] Hodson alleges the FCC denial at issue occurred on March 31, 2010.[51] Thus, the deadline to file the AFR was April 30, 2014. The AFR is considered "filed" on the day in which the FCC receives it.[52] Hodson has not alleged its filing met the April 30, 2010 deadline. While it alleges the FCC's date stamp of "March 6, 2010" is inaccurate, Hodson does not allege it actually sent the AFR with sufficient time for the FCC to receive it before the filing deadline.[53] Nor does Hodson allege any facts indicating the FCC actually received the AFR before the filing deadline. Even accepting as true Hodson's allegation that the FCC's date stamp was inaccurate, it has failed to allege a claim, and thus amendment would be futile.

Hodson also has unduly delayed seeking amendment. Hodson was aware of the FCC's alleged actions from the outset of this case. It has provided no explanation for its delay.

---

[50] 47 CFR § 1.104(b).

[51] [Dkt # 32, ¶37.]

[52] 47 CFR § 1.7. Hodson urges me to apply the deadline procedures for "service" of documents, rather than the rules for "filing" of documents. Hodson provides no authority for this contention.

[53] [Dkt #32, ¶37-39.]

> *2. Hodson fails to state a claim that the FCC improperly failed to respond to the SF 95 form.*

Hodson alleges the FCC is liable for failing to respond to an FTCA claim form. But, as pointed out by the Government, the FCC has no enforceable obligation to respond to FTCA claim forms, and Hodson has not demonstrated any injury by the FCC's inaction.[54] Hodson was free to treat the FCC's inaction as a rejection and seek review in court.[55]

Moreover, even if the FCC had an obligation to review FTCA claim forms, the FTCA does not apply "where the claimed negligence arises out of the failure of the United States to carry out a [federal] statutory duty in the conduct of its own affairs." *Johnson v. Sawyer*, 47 F.3d 716, 727–728 (5th Cir.1995) (en banc); *see also Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir.1983) (holding FTCA does not create new causes of action or provide a means to enforce an agency's statutory duties); *Williams v. United States*, 242 F.3d 169, 173 (4th Cir.2001) ("[T]he test established by the [FTCA] for determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred."); *Brunson v. C.I.A.*, CA 3:12-813-JFA-PJG, 2012 WL 2873893 (D.S.C. June 14, 2012) report and recommendation adopted, 3:12-CV-813-JFA, 2012 WL 2879007 (D.S.C. July 13, 2012) ("[N]o viable FTCA claim case can be stated based only on allegations that neither agency responded to the administrative claim [SF 95 form] that was submitted.").

Hodson's amendment is futile, and, like its AFR claim, unduly delayed. For these reasons I will not allow Hodson leave to amend.

## III. CONCLUSION

IT IS THEREFORE ORDERED that the Government's Motion for Summary Judgment is GRANTED. Hodson's request for leave to amend is DENIED.

---

[54] *Yisra'EL v. U.S. Dep't of Justice*, No. 5:11–289, 2011 WL 4458772 (E.D.Ky. Sept. 23, 2011) (holding agency not required to respond to FCTA claim, because the claimant "could have deemed the failure of the [agency] to respond to his claim as a denial of the claim and proceeded to file suit in district court").

[55] *Autery v. United States,* 424 F.3d 944, 955 (9th Cir. 2005).

IT IS FURTHER ORDERED that the Clerk of the Court is instructed to enter judgment in favor of the United States and to close the case.

DATED THIS 15th day of September, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE